**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**LEANN ARNOLD**                                                                    **PLAINTIFF**

**V.**                                               **4:19-cv-00394-BRW**

**PINNACLE STRUCTURES, INC.**                                           **DEFENDANT**

**DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendant, Pinnacle Structures, Inc. ("Pinnacle" or "Company"), by its attorneys, Friday, Eldredge & Clark, LLP, submits the following Brief in Support of its Motion for Summary Judgment.

**I.      INTRODUCTION**

The issue in this case is straight forward: was Plaintiff, a purchasing agent, an administrative employee exempt from the Fair Labor Standards Act's ("FLSA") overtime requirement?  The uncontroverted evidence shows that Plaintiff (i) was compensated on a salary basis; (ii) performed office work directly related to the management and business operations of Pinnacle; and (iii) exercised discretion and independent judgment with respect to the Company's purchasing and procurement.  As a result, Plaintiff falls squarely within the administrative exemption and was not entitled to overtime compensation.  Defendant therefore is entitled to judgment as a matter of law.

**II.      FACTUAL BACKGROUND**

Pinnacle is an Arkansas company that designs and manufactures pre-engineered metal buildings.  Ex. A at ¶ 2.  Pinnacle specializes in customized agricultural, commercial, industrial, and residential metal buildings and components.  Ex. A at ¶ 2.  Plaintiff Leann Arnold worked at

1

Pinnacle from September 2010 through May 2019.  Ex. A at ⁋ 3. Plaintiff was employed by Pinnacle as a purchasing agent during all times relevant to the claims in her Complaint.  Ex. A at ⁋ 4.  Plaintiff was paid a salary of $50,000 during the last part of her employment at Pinnacle. Ex. A at ⁋ 5.

The undisputed evidence shows that in her role as purchasing agent, Plaintiff was intimately involved in every aspect of purchasing and procurement for the Company.  Her personal resume describes her role as being "responsible for purchasing functions, inventory management, and vendor relationships." Ex. D; Ex. B at 48-49.

In order to determine what materials needed to be ordered, Plaintiff was involved in managing the Company's inventory.  Ex. H; Ex. B at 60:25-61:3.  Plaintiff explained that it was her practice to sit down at the end of the day without any interruptions and determine what supplies the Company needed. Ex. B at 96:1-20.  She checked each order and made sure the Company had all the material it needed available on hand.  And she ordered any missing materials to ensure that the Company was able to meet its production deadlines.  Ex. B at 96:1-20.

Based on Plaintiff's assessment and the needs of the Company, Plaintiff solicited bids and quotes from vendors.  Ex. C; Ex. B at 68:10-14.  After she received vendors' quotes, she negotiated directly with vendors on pricing, price trends, transportation issues, and orders.  Ex. A at ⁋ 14; Ex. D, I; Ex. B at 50:7-8.  In selecting vendors, Plaintiff explained that she had preferred vendors and tried to keep business with those vendors by recommending the vendors to Company management.  Ex. R; Ex. B at 91:21-92:8.  Plaintiff had wide latitude in her negotiations with vendors, and Company management was not involved in these negotiation. Ex. A at ⁋ 22.  In recommending which vendor the Company should choose, she weighed "the

actual price, the availability, and the track record of the company the vendor that we're dealing with. . . . [T]he price was the ultimate goal was to get it as cheap as we could but also delivery and availability was a big deal." Ex. B at 94:18-25.  Plaintiff further explained that the prices she negotiated with vendors were driven by inventory level. Ex. B at 69-71.

As purchasing agent, Plaintiff maintained the Company's pricing spreadsheets and bid lists.  Ex. A at ⁋ 10.   Plaintiff also participated in regular meetings with senior management personnel.    Ex.  B  at  54:15-25.    At  these  meetings,  management  sought  Plaintiff's recommendations, and Plaintiff and others discussed vendor selection and product pricing.  Ex. B at 54:15-25.

Once vendors were selected, Plaintiff executed and delivered purchase orders to those vendors.  Ex. B at 69:8-14.  If a vendor required a signed acknowledgment, Plaintiff signed purchase acknowledgement forms on behalf of the Company.    Ex. T, U; Ex. B at 53:18-54:1. Plaintiff acknowledged in her deposition that she was the only person with the Company who signed these documents which included pricing and terms and conditions, and she admitted that she committed the Company to these terms. Ex. B at 53; 55:14-16.  In doing so, Plaintiff committed the Company to prices ranging from $5,000 to more than $400,000.  Ex. A at ⁋ 13; Ex. B at 62:2-6*; see also* Ex. I, P, Q.  Indeed, in 2018 alone, she issued and delivered purchase orders valued at more than $20 million.  Ex. B at 73:8-11.  In nearly all of her communications with vendors, she did not copy anyone else at Pinnacle and was acting alone on behalf of the Company.  Ex. B at 71:21-72:3; 73:15-24; Ex. A at ⁋ 15.  Plaintiff alone was responsible for purchasing the material that ran the business. Ex. A at ⁋ 8.

Once Plaintiff committed the Company to these vendors, she was responsible for enforcing the agreements with vendors to ensure that the Company's production schedules ran

FEC\20368\0060\7793285.v1-7/23/20

smoothly. Ex. B at 50:9-11; Ex. D.  For example, Plaintiff set and enforced delivery times with vendors to ensure supplies were on time in order to keep the production lines running.  Ex. H, J, N; Ex. B at 61:20-23.  She confirmed that it was her job to "get [the shipment] there on time if [she could] get it done and if not to hold [the vendors] accountable for their failures." Ex. B at 66:20-23.  She likewise had the authority to cancel purchase orders without management approval in order to meet production time frames.  Ex. A at ¶ 17; Ex. B at 52:8-10; Ex. E.  Similarly, Plaintiff had the authority to withhold payment on purchase orders without management approval when vendors did not fulfil their commitments—failures that she would have been keenly aware of because she had negotiated with the vendors and signed the purchase acknowledgements.  Ex. A at ¶ 18; Ex. L; Ex. B at 65:11-21.

Given Plaintiff's position of importance at the Company, she also was responsible for solving problems.  Plaintiff stated that the bulk of her eight-hour day consisted of "[p]utting out fires."  Ex. B at. 95:12-14.  For example, she explained that she was "in the shop a lot dealing with problems."  Ex. B at 90:15.  If there were issues with supplies, she would decide if the Company would reject the material.  Ex. B at 90:14-20.  She also was responsible for resolving issues with vendors.  Ex. B at 10:6-13.  Management did not direct how Plaintiff resolved these issues.  Ex. A at ¶ 19.

Although Plaintiff had to get ultimate approval from Mr. Feland or Mr. Fairchild before making purchases, Plaintiff did all the work related to Company purchases, and ultimate approval was often a perfunctory function.  Ex. A at ¶ 21; Ex. B at 70-71.  She assessed the inventory, determined what purchases were needed and from whom, evaluated what price was reasonable, and negotiated with vendors to get to that price.  Ex. A at ¶ 21.  Plaintiff then made recommendations to Will Feland, President of Pinnacle, or Josh Fairchild, Executive Vice

President of Pinnacle.   Ex. A at ℙ 20.   She had a wide range of discretion in recommending products, vendors, and prices.   Ex. A at ℙ 22.   Given Plaintiff's involvement with inventory management and vendor relationships, management relied on Plaintiff's advice and input and asked for her recommendations on products and pricing.   Ex. A at ℙ 23; Ex. G.

Subject to management's approval, Plaintiff executed on her recommendations.   Ex. B at 77:21-25; Ex. S.   Often management's approval was very "informal."   Ex. B at 77:25.   Because of Plaintiff's experience and involvement in the day-to-day purchasing functions, management regularly approved her recommendations without much thought.   Ex. A at ℙ 24.   Plaintiff explained that approval often came by way of a verbal discussion in the hallway where she would represent, after doing all the leg work, that she could get a certain price and Mr. Feland would say, "go for it."   Ex. B at 77:21-25; *see also* Ex. B at 78:1-5.

In some instances, Mr. Feland's "thumbs up" was not even required.   For example, in response to Mr. Feland's invitation to discuss a potential purchase supplier, Plaintiff responded that she already "committed with Metal Prep yesterday morning."   Ex. G; Ex. B at 57-58.   Thus, while ultimate approval was ordinarily required (even if informal and perfunctory in most cases), in some cases Plaintiff made unilateral purchasing decisions.   Ex. A at ℙ 25.

## III.   STANDARD OF REVIEW

Summary judgment is appropriate when the movant has established the absence of a genuine dispute of material fact and demonstrated its entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87; *Nat'l. Bank of Commerce of El Dorado, Ark. v. Dow Chem. Co.*, 165 F.3d 602 (8th Cir. 1999).   To defeat a motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts."   *Matsushita Elec. Indus.*

FEC\20368\0060\7793285.v1-7/23/20

*Co.* at 586.   The non-moving party may not rest on mere allegations or denials of his pleading, but must "come forward with 'specific facts showing that there is a genuine issue for trial.'"   *Id.* at 587 (quoting Fed. R. Civ. P. 56(e)).   The mere existence of some alleged factual dispute will not defeat a properly-supported motion for summary judgment; the disputed fact must be "outcome determinative."   *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989).

## IV.   ARGUMENT

### A.  The Administrative Exemption of the FLSA Applies

The FLSA requires employers to pay overtime of at least one and one-half times the regular pay rate for employees who work more than forty hours in one workweek.   *See* 29 U.S.C. § 207(a)(2).   Bona fide administrative employees, however, are exempt from this provision, and are not entitled to additional compensation.   *See* 29 U.S.C. § 213(a)(1).   An employee fits within the administrative exemption of the FLSA if: (1) the employee is compensated on a salary or fee basis at a rate of not less than $455[1] per week; (2) the employee's primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (3) the employee's primary duty includes the exercise of discretion and independent judgment with respect to matters of significance. 29 C.F.R. § 541.200(a).

Although the amount of time devoted to administrative duties and the significance of those duties present factual questions, "[t]he ultimate question . . . of 'whether employees' particular activities excluded them from the overtime benefits of the FLSA is a question of law[.]'"   *Spinden v. GS Roofing Prod. Co.*, 94 F.3d 421, 426 (8th Cir. 1996) (alterations omitted) (quoting *Icicle Seafoods, Inc. v. Worthington*, 475 U.S. 709, 714 (1986)).   Therefore, the issue of

---

[1]    The Department of Labor recently increased the salary level from $455 to $684 per week.  Those changes were effective as of January 1, 2020.  Because the allegations in Plaintiff's Complaint relate to events occurring before January 1, 2020, the previous salary level applies.

whether an employee was properly classified as exempt may be decided on summary judgment. *See Brown v. USAble Mut. Ins.*, No. 4:19-CV-00183-BRW, 2020 WL 3104084, at *1 (E.D. Ark. June 11, 2020) (Wilson, J.) (granting summary judgment for employer and holding plaintiffs were exempt administrative employees); *McQuay v. Am. Int'l Grp., Inc.*, No. 4-01-CV-00661-WRW, 2004 WL 5711192, at *1 (E.D. Ark. July 26, 2004) (Wilson, J.) (granting summary judgment for employer and holding plaintiffs were exempt administrative employees).

### B. Purchasing Agents Generally Are Considered Exempt Under the FLSA

The regulations, administrative guidance, and case law all instruct that purchasing agents like Plaintiff generally are exempt administrative employees under the FLSA.

The regulations provide examples of employees that qualify for the administrative exemption and expressly include "purchasing agents." 29 C.F.R. § 541.203. Further, the Department of Labor ("DOL") issued an Opinion Letter in 2008 in which it concluded that purchasing agents at a motor home manufacturer qualified for the administrative exemption. *See* Opinion Letter Fair Labor Standards Act (FLSA), 2008 WL 833151, at *1.[2] The main duties of the purchasing agent in that letter ruling were almost identical to plaintiff's job duties in this case. They included: ensuring that materials, equipment, and supplies were timely ordered and delivered so the manufacturing process functions smoothly; negotiating prices with vendors; placing orders; maintaining records and handling returned goods; setting delivery times to maintain appropriate inventory level; and requesting quotes.

In that factually similar scenario, the DOL determined that "the PAs in question perform office or non-manual work and that their duties—ensuring that materials, equipment, and supplies are ordered and delivered and participating in the vendor selection process—directly

---

[2]    Guidance such as the referenced opinion letter are entitled to respect under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944).

FEC\20368\0060\7793285.v1-7/23/20

relate to the functional areas of purchasing and procurement." *Id*.  The DOL further determined that the purchasing agents exercised discretion because, among other things, they ensured that materials were ordered and delivered so the company's manufacturing process functions smoothly; they requested quotes from potential vendors, negotiated with vendors, and recommended vendors; and set delivery times to ensure appropriate inventory level. *Id*.  Importantly, the DOL explained that the requirement to have managers approve certain purchase orders did not negate the purchasing agents' discretion because "employees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level." *Id*. (citing § 541.202(c)).

Following this guidance, courts have held that purchasing agents in positions like Plaintiff are considered exempt under the FLSA.  For example, a court in the Western District of Washington held that a senior buyer was properly classified as administratively exempt.  *See Bailey v. Alpha Techs. Inc.*, No. C16-0727-JCC, 2017 WL 4167929, at *6 (W.D. Wash. Sept. 19, 2017).   In that case, the plaintiff compared and evaluated different courses of conduct by choosing the method of delivery for the products she negotiated to buy, she negotiated directly with contract manufacturers to obtain the materials Defendants needed to build its products, and she agreed to and signed non-cancelable agreements that obligated Defendants to certain manufacturers.  *Id.* at *6.

Notably, the court still found the plaintiff in that case was exempt even though she did not exercise discretion and independent judgment in all aspects of her job. Plaintiff did not choose which products to buy and was limited to negotiate with only certain vendors.  She had to seek a supervisor's approval to deviate from certain purchase prices, and final purchase prices were constrained by the company's price list.  Yet, the court held, "[j]ust because Bailey's

8

discretion was limited by policy and supervisors in some areas of her job does not mean she did not exercise discretion and independent judgment in other aspects of her work. Bailey has not rebutted the fact that in the areas of negotiation, procurement, and delivery of products discussed *supra*, she was not constrained by her supervisors." *Id.* at *7.

Similarly in *Ritchie v. United Techs. Auto., Inc.*, No. 1:98-CV-131, 1999 WL 33593493, at *1 (W.D. Mich. May 17, 1999), the court granted summary judgment for employer and found the plaintiff, a purchasing manager, was properly classified as exempt.  There, the court determined that the purchasing manager exercised independent judgment and discretion in performing her purchasing duties where she, among other tasks, entered into vendor contracts on behalf of the company; corresponded with vendors directly and provided vendors with feedback; rendered advice to various departments regarding new products; and made recommendations about whether to pay certain invoices.  *Id.*

In sum, the regulations, administrative guidance, and case law all support the Defendant's position that Plaintiff is an exempt administrative employee.

### C.   The Undisputed Evidence Demonstrates that As a Purchasing Agent, Plaintiff Was an Administratively Exempt Employee

#### 1.   *Plaintiff was paid on a salary basis*

First, Plaintiff was compensated on a salary basis at a rate of not less than $455 per week. 29 C.F.R. § 541.200(a)(1).  Plaintiff was a salaried employee, and she was paid $50,000 per year. Ex. A at ⁋ 5.  This requirement does not appear to be disputed.

#### 2.   *Plaintiff's work was directly related to Pinnacle's management and business operations*

Second, Plaintiff's primary duty was the performance of office work that was directly related to the management or general business operations of Pinnacle.  *See* 29 C.F.R.

§ 541.200(a)(2).  It is undisputed that the work Plaintiff performed was office work.  Ex. A at ¶ 6.  And the evidence shows that the office work Plaintiff performed was related to the management and general business operations of Pinnacle.  To meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished from working on a manufacturing production line or selling a product in a retail or service establishment.  29 C.F.R. § 541.201(a).  The regulations provide a non-exhaustive list of work that is clearly related to the management or general business operations.  *Id.* § 541.201(b). This list specifically includes purchasing and procurement.  *Id.*

Here, Plaintiff performed work that was directly related to running Pinnacle's operations, and she was directly involved in work that affected Pinnacle's bottom line.  Plaintiff testified in her deposition that she solicited bids from vendors, negotiated with vendors on pricing; signed purchase orders and acknowledgement forms committing the Company on prices ranging from $5,000 to more than $400,000; scheduled deliveries; set and enforced delivery times with vendors to ensure supplies were on time in order to keep the production lines running; made recommendations to Company management for final approval; maintained the Company's pricing spreadsheets and bid lists; and confirmed and enforced the terms of purchase agreements with vendors, including enforcing payment terms with vendors and cancelling orders that did not meet the agreed upon terms.  Plaintiff was responsible for purchasing the material that ran the business.  Ex. B at 73:5-7; Ex. A at ¶ 8.  Indeed, Plaintiff admits that in 2018 alone, she was responsible for purchasing more than $20 million in product for the Company.  Ex. B at 73:8-11. Plaintiff also participated in weekly meetings with senior management personnel, and at these meetings, Plaintiff and others discussed issues of importance to Pinnacle.  *See Spinden*, 94 F.3d

FEC\20368\0060\7793285.v1-7/23/20

at 428 (reasoning that attendance and participation at meetings with management was factor to be considered in determining whether employee was exempt under FLSA).

It is indisputable that Plaintiff's recommendations, decisions, and work affected the functions of the business. For example, in her own resume, Plaintiff described that she oversaw the production schedule "to ensure material is available to fulfill scheduled deliveries" and "follow[ed] market conditions affecting availability and pricing of raw materials." Ex. D. The evidence shows that Plaintiff was in constant communication with vendors to ensure timely deliveries to meet production timeframes and unilaterally canceled orders that would not meet those timeframes. *See* Ex. E. For example, Plaintiff wrote to a vendor regarding a delivery time and stated, "[W]e are at the point to day of having to send our shop home due to no material." Ex. J. In another email with a vendor, she stated, "We have jobs that we will miss if this material does not arrive today." Ex. N. As a result, her work ensured that there was adequate inventory to keep the production line running. Moreover, her work negotiating pricing with vendors, which was not overseen by management, affected the company's bottom line. Ex. A at ¶ 14.

### 3.  Plaintiff exercised discretion and independent judgment

Third, Plaintiff exercised discretion and independent judgment with respect to matters of significance. *See* 29 C.F.R. § 541.200(a)(3).

"In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered." 29 C.F.R. § 541.202(a). Importantly, discretion does not mean that an employee "must have a finality that goes with unlimited authority and a complete absence of review." *McAllister v. Transamerica Occidental Life Ins. Co.*, 325 F.3d 997, 1001 (8th Cir. 2003); *see also Dymond v. U.S. Postal Serv.*, 670 F.2d 93, 96 (8th Cir. 1982)

FEC\20368\0060\7793285.v1-7/23/20

("Even though an employee's work is subject to approval, even to the extent that a decision may be reversed by higher level management, it does not follow that the work did not require the exercise of discretion and independent judgment as the terms are defined for the administrative employee exemption."). Instead, the exercise of discretion may include making recommendations that are reviewed and approved at a higher level. *See* 29 C.F.R. § 541.202(c). Courts apply this same standard in cases involving purchasing agents. "[T]he requirement of management approval does not necessarily undermine the exempt status of buyers who otherwise have discretion and exercise independent judgment.. . . . [A] company-wide requirement of management approval for all buyer purchasing is not enough to render suspect a company-wide classification of the procurement function as an exempt position." *McKnight v. Honeywell Safety Prod. USA, Inc*., No. CV 16-132 S, 2017 WL 3447894, at *10 (D.R.I. Aug. 11, 2017) (denying motion for conditional certification).

The undisputed evidence shows that it was Plaintiff's job to weigh and evaluate inventory level, product availability, and price, among other factors, in order to determine at least four decision points for the Company: (i) what products to order, (ii) which vendors to order from; (iii) a reasonable price to pay; and (iv) when the products would be delivered.

*First*, she explained that she determined what products the Company should order by evaluating what the Company had on hand and what inventory was low. Ex. B at 96:1-20.

*Second*, in selecting vendors, Plaintiff explained that she had preferred vendors and tried to keep business with those vendors by recommending the vendors to Company management. Ex. R; Ex. B at 91:21-92:8. In making recommendations, she has a wide range of discretion on which products, vendors, and prices the Company should use. Ex. A at ¶ 22. She explained that she weighed "the actual price, the availability, and the track record of the company the vendor

that we're dealing with. . . . [T]he price was the ultimate goal was to get it as cheap as we could but also delivery and availability was a big deal." Ex. B at 94:18-25.

*Third*, in negotiating with vendors on price, Plaintiff explained that she was "trying to get to the bottom dollar as to the best price we can purchase the material. . . and have the availability and dependable delivery." Ex. B at 93:13-18.   Plaintiff explained that inventory level was the driving factor in her recommendations on price. Ex. B at 69-71.   Given Plaintiff's involvement with inventory management and vendor relationships, management relied on Plaintiff's advice and input and asked for her recommendations on products and pricing.   Ex. A at ¶¶ 20, 23.

*Fourth*, Plaintiff scheduled product deliveries to ensure supplies were on time in order to keep the production lines running.   She confirmed that it was her job to "get [the shipment] there on time if [she could] get it done and if not to hold [the vendors] accountable for their failures." Ex. B at 66:20-23.   In order to meet these deadlines, she had the authority to cancel purchase orders and to withhold payment on purchase orders, both without management approval. Ex. A at ¶¶ 17, 18; Ex. E, L; Ex. B at 52:8-10; 65:11-21.

It is clear that Plaintiff's job involved the "comparison and the evaluation of possible courses of conduct[]" and making recommendations " after the various possibilities have been considered."   29 C.F.R. § 541.202(a).   The fact that Company management had to approve Plaintiff's purchase recommendations does not undercut her independence and discretion in making these recommendations.   *See* 29 C.F.R. § 541.202(c).   Management approval in most instances was perfunctory, and the evidence shows that in some instances, Plaintiff made decisions before management provided input or approval.   Ex. A at ¶¶ 14, 15; Ex. G; Ex. B at 57-58.

On top of these decisions, Plaintiff explained that her day also involved "[p]utting out fires." Ex. B at 95:12-14.  If there were issues with supplies, she would decide if the Company would reject the material.  Ex. B at 90:14-20.  If there were issues with products arriving late, she was in charge of making sure they got there on time or canceling the order and finding another vendor.  Ex. B at 51:5-23; Ex. E.  She also was responsible for resolving issues with vendors, and management left it up to her as to how she resolved those issues.  Ex. A at ¶ 19; Ex. B at 10:6-13.  Her unfettered discretion in enforcing the purchasing orders she made underscores her independence and discretion.  "Even if she was required to seek management's approval in some aspects of her work, she still possessed autonomy to make decisions within her sphere of authority." *Bailey v. Alpha Techs. Inc.*, No. C16-0727-JCC, 2017 WL 4167929, at *6 (W.D. Wash. Sept. 19, 2017).

Finally, the fact that Plaintiff exercised discretion on matters of significance is clear from the fact that in 2018 alone, she was responsible for purchasing more than $20 million in product for the Company.  Ex. B at 73:8-11.

## V.    CONCLUSION

The undisputed evidence shows that Plaintiff was compensated on a salary basis; performed office work directly related to the management and business operations of Pinnacle; and exercised discretion and independent judgment with respect to the Company's purchases. Plaintiff therefore is an administrative employee exempt from FLSA's overtime requirement, and the Court should grant summary judgment in favor of Pinnacle.  *See Brown*, 2020 WL 3104084; *McQuay*, 2004 WL 5711192.

14

WHEREFORE, Defendant, Pinnacle Structures, Inc., respectfully requests that its Motion for Summary Judgment be granted, that Plaintiff's claims against it be dismissed with prejudice, and that it be awarded any further relief to which it may be entitled.

Dated: July 23, 2020                  Respectfully submitted,

FRIDAY, ELDREDGE & CLARK, LLP

Michael S. Moore, AR Bar 82112
2000 Regions Center
400 West Capitol Avenue
Little Rock, AR 72201-3493
501-370-1526 – Telephone
mmoore@fridayfirm.com

Katherine C. Campbell, AR Bar 2013241
3350 South Pinnacle Hills Parkway
Suite 301
Rogers, Arkansas  72758
479-695-6040 - Telephone
kcampbell@fridayfirm.com

*Counsel for Defendant*

15